UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
**KARLA TALFORD**,                                            :
                                                              :
                Plaintiff,       :   **MEMORANDUM DECISION AND**
                                                              :   **ORDER**
       – against –                                 :
                                                              :   22-CV-7442 (AMD)
**COMMISSIONER OF SOCIAL SECURITY**,                          :
                                                              :
                Defendant.       :
                                                              :
------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

The plaintiff appeals the Commissioner of Social Security's (the "Commissioner") decision denying her Social Security Disability Insurance ("SSDI") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Before the Court are the parties' cross-motions for judgment on the pleadings. (ECF Nos. 9, 11.) For the reasons set forth below, the plaintiff's motion is granted, the Commissioner's motion is denied, and the case is remanded for further proceedings consistent with this Order.

## BACKGROUND

The plaintiff applied for SSDI on February 12, 2020, alleging disability since September 13, 2019 because of lupus. (Administrative Transcript ("Tr.") 13, 15.) She also suffers from headaches, hypertension, depression and anxiety. (Tr. 15.) After the Commissioner denied the plaintiff's claim on February 11, 2021 (Tr. 93), the plaintiff requested a hearing (Tr. 119). Administrative Law Judge ("ALJ") Lori Romeo held a virtual hearing on January 26, 2022, at which a Vocational Expert ("VE") and the plaintiff, who was represented by counsel, testified. (Tr. 28.) On March 22, 2022, the ALJ determined that the plaintiff was not disabled. (Tr. 10.) On November 29, 2022, the Appeals Counsel denied the plaintiff's request for review, rendering

the ALJ's denial the "final decision" of the Commissioner and therefore subject to judicial review. (Tr. 1.)

## I. Benefits Assessment Under the Social Security Act

A person is disabled under Title II of the Social Security Act if she cannot engage in substantial gainful activity because of a physical or mental impairment that has lasted or is expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A); *McIntyre v. Colvin*, 758 F.3d 146, 149–50 (2d Cir. 2014) (quoting *Cichocki v. Astrue*, 729 f.3d 172, 176 (2d Cir. 2013)). That means that to qualify for benefits under the Act, a claimant must be unable to do her previous work or any other kind of work. *Dousewicz v. Harris*, 646 F.2d 771, 772 (2d Cir. 1981). To qualify for disability insurance benefits, the claimant must demonstrate that she was disabled as of the date she was last insured. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citing 42 U.S.C. § 423(a)(1)(A)).

An ALJ uses a five-step sequential evaluation process to decide whether a claimant satisfies this standard. At the first step, the ALJ determines whether the claimant is currently engaged in any substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not, the ALJ must next determine whether the claimant has a "severe impairment" that significantly limits her ability to do basic work activities. *Id.* § 404.1520(a)(4)(ii). If the claimant has a severe impairment, the ALJ must then decide whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Appendix 1"). If it is, the ALJ will presume that the claimant is disabled. *Id.* § 404.1520(a)(4)(iii). If the impairment is not listed, the ALJ must assess the claimant's residual functional capacity—her ability to work on a sustained basis despite the impairments. At step four, the ALJ must determine whether the claimant has the residual functional capacity to perform her past work. *Id.* § 404.1520(a)(4)(iv). Finally, if the claimant

2

cannot do her previous work, the ALJ must determine whether she can do another job. *Id.* § 404.1520(a)(4)(v).

"The claimant has the general burden of proving that [she] . . . has a disability within the meaning of the Act, and bears the burden of proving [her] . . . case at steps one through four . . . ." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (citations omitted). At the last step, however, "the burden shifts to the Commissioner to show there is other work that the claimant can perform." *McIntyre*, 758 F.3d at 150 (cleaned up).

## II.     The Record Before the ALJ

The ALJ reviewed the plaintiff's medical records, treatment notes from her doctors, consultative medical opinions, and testimony from the VE and the plaintiff.

### a.     Medical Records and Treatment Notes

The plaintiff was diagnosed with Systemic Lupus Erythematosus ("SLE").[1] (Tr. 600.) Dr. Victoria Bellot, M.D., and nurse practitioner Prasijia Manoj treated her from at least 2019 through 2021.[2]

In August 2019, shortly before the plaintiff stopped working, she saw Dr. Shirin Attarian, M.D., an oncology and hematology specialist, who noted that her lymph nodes were larger than normal, and that her intermittent joint pain and additional symptoms were "concerning" and "highly suggestive of a rheum[atological] disease." (Tr. 311–12.) Dr. Attarian referred her to

---

[1] The dates of her respective diagnoses in the record are inconsistent. (*Compare* Tr. 600 (the plaintiff was diagnosed with lupus in 2018 and mixed connective tissue disease in 2020), *with* Tr. 609 (the plaintiff was diagnosed with lupus in 2020 and mixed connective tissue disease in October 2019).)

[2] It is not clear whether Dr. Bellot or nurse practitioner Manoj treated the plaintiff before 2018. In her motion for judgment on the pleadings, the plaintiff states that Dr. Bellot and nurse practitioner Manoj have "seen, examined, and treated [the plaintiff] extensively." (ECF No. 9-1 at 14.) According to a March 22, 2021 disability report, the plaintiff's "first visit" with Dr. Bellot was in 2019, and her "last visit"—at that time—was in 2021. (Tr. 264.) This is the most recent report that discusses Dr. Bellot. The record also shows that the plaintiff saw nurse practitioner Manoj from 2018 to 2021. (Tr. 208.)

Dr. Magdalena Cadet, M.D., whom the plaintiff saw in September 2019. Dr. Cadet diagnosed the plaintiff with "mixed connective tissue disease" (Tr. 308), and prescribed Plaquenil to decrease her pain and swelling (Tr. 464). The plaintiff returned to Dr. Attarian on November 19, 2019, stating that she felt fatigue and joint pain. (Tr. 306.)

In a March 2021 functional assessment, Nurse Manoj wrote that the plaintiff could not lift or carry more than 10 pounds, stand or walk more than two hours in a workday, and had "frequent flare ups."[3] (Tr. 605–07.) In a January 2022 functional assessment, Dr. Bellot confirmed Nurse Manoj's assessment and diagnosed the plaintiff with connective tissue disease, SLE, lupus membranous nephropathy, joint pain, swollen hands and feet, fatigue and migraines. (Tr. 676–77.)

      b.    **Consultative Evaluations**

Dr. Marie-Florence Shadlen, M.D., an internal medicine specialist in New York, did a consultative evaluation of the plaintiff on December 1, 2020 and concluded that, in addition to SLE and mixed connective tissue disease, the plaintiff also suffered from "profound fatigue" and "chronic migraines." (Tr. 600–03.) The plaintiff had "moderate to marked limitations with stooping, squatting, lifting, carrying prolonged sitting, prolonged standing, prolonged walking, and climbing stairs" because of her SLE and mixed connective tissue disease symptoms. (*Id.*) The plaintiff was further limited by "chronic migraines and fatigue." (*Id.*)

---

[3] "SLE causes a person's immune system to attack and injure the body's own organs and tissues. Its cause is unknown, and diagnosis can be difficult. Symptoms vary greatly and may include: joint pain including arthritis, skin rashes, coughing and shortness of breath, fever, fatigue, weight loss, nausea and vomiting, headaches and confused thinking, kidney malfunction, and pericarditis (inflammation of the tissue surrounding the heart). Almost every system of the body can be affected." *Mead v. Colvin*, No. 15-CV-1331, 2017 WL 1134393, at *1 (D. Conn. Mar. 27, 2017) (quoting *Johnson v. Astrue*, 628 F.3d 991 (8th Cir. 2011)).

On July 30, 2021, Dr. Ioanis Atoynatan, M.D., also examined the plaintiff and reported that she had lupus and mixed connective tissue disease. (Tr. 609.) The plaintiff told Dr. Atoynatan that when her SLE flares up, she suffers from joint pain, swelling in her hands and feet, "nodules in the skin," and fatigue. During these flare ups, she has trouble walking, is "unable to use her fingers," and is "frequently unable to get out of bed." (*Id.*) The plaintiff also said that her flare ups occurred once a month and could last from one to two months. (*Id.*)

Dr. Atoynatan noted that mixed connective tissue disease "is a recurrent problem with joints that come and go and have flare-ups," that the plaintiff has "swelling of the hands, nodules in the skin, and joint pains . . . [which] varies from place to place," "frequently [] the elbows, wrists, fingers, knees, and ankles," and that "between the lupus and the mixed connective tissue disease, [the plaintiff suffers] fatigue and weakness." (Tr. 609.) He concluded that "[c]urrently, the [plaintiff] does not have any physical limitations, but due to the frequency and severity of the flares of the mixed connective tissue she may experience schedule interruptions." (Tr. 612.)

Dr. D. Schwartz, M.D., did not personally examine the plaintiff, but reviewed her records on February 11, 2021. Based on that review, he determined that the plaintiff was "not disabled" and that her symptoms were only "partially consistent" with the medical record. (Tr. 68–72.) He determined that the plaintiff had the residual functional capacity to sit or walk for 45 minutes every hour, for a total of six hours in a workday, and was "capable of light work functions." (*Id.*) Dr. C. Levit did not see the plaintiff either, but reviewed her medical record on September 21, 2021 and "affirmed" Dr. Schwartz's February 11, 2021 assessment. (Tr. 89.)

      c.      **Vocational Expert's Testimony**

VE Marian Marracco testified at the January 2022 hearing. The ALJ asked her to assume a hypothetical individual of the plaintiff's age, education, and work history, who was limited to:

5

> sedentary work as defined in 20 CFR 416.967(a), except that she can occasionally stoop and squat and cannot work outside in hot weather due to swelling in her legs [and that she] can understand, remember and apply simple and more complex instructions and can occasionally interact with the public and coworkers.

(*Id.*) VE Marracco responded that under these circumstances the hypothetical person could work as a "document preparer," an "optical polisher," a "laminator," or a "surveillance system monitor." (Tr. 22.)

### d. The January 2022 Hearing

The plaintiff testified that she lived alone and had not worked since September 13, 2019 because of her lupus flare ups (Tr. 36-39), which could last anywhere from 24 hours to three weeks (Tr. 38). Her flares "never last[] just a day," and "four days is the minimum." (*Id.*) She also had severe headaches, swelling, and joint pain. (Tr. 39.)

The plaintiff relied on public assistance, and occasional financial assistance from her family. (Tr. 48-49.). She was previously a babysitter and a nurse, and still had her practical nurse license. (Tr. 47-48.) The plaintiff "[didn't] go anywhere," and if she "li[ed] down too long, [her] hips . . . hurt." (Tr. 42.) She cleaned only the part of the house "where [she] stays," which includes her bedroom and the bathroom. (Tr. 43.) She said that "if [she] cooks," she uses paper plates or microwaves food; she sometimes "cook[ed] once a month and [froze]" the food so she would not have to "do it again." (*Id.*) She went to appointments with her mental health providers, but she did not go to a physical therapist because her doctors had not recommended it. (Tr. 44.)[4]

---

[4] In the plaintiff's self-evaluation, she wrote that her headaches caused "stabbing" pain behind her eyes and intense pressure, which made it difficult for her to work around the house; sleeping was the only way for her to "cope." (Tr. 223, 228.) She could not sit for long periods of time because of "extreme inflammation." (Tr. 228.) She used to enjoy playing sports, cooking, and shopping; however, her SLE symptoms are too painful for her to continue any physical activity. (Tr. 230.)

The ALJ observed at the hearing that "[i]t appears that when the claimant is good, she's very very good, and when she's bad, she's really bad," and that "it is brutal." (Tr. 34–35.) The plaintiff responded that she never felt "very, very good," and that "[e]very day I have pain and most of the time my hands swell . . . and definitely my leg, but I don't know about very, very good." (Tr. 41.)

The ALJ noted that she looked in her file and "could not identify the locations where [the plaintiff] has the flare-ups and where [the plaintiff] is not feeling very well." (Tr. 34.) The ALJ "did not go over every reported symptom[,] I will admit that." (*Id.*) She "promised[d] to do" so before rendering her decision. (*Id.*) She noted that the plaintiff "might have frequent flare-ups," and that "she does go to the doctor sufficiently where a report of symptoms, if [there are] enough of them, [she] should be able to find her off task."[5] (Tr. 35.) The plaintiff's counsel told the ALJ that he would get her additional information within "twenty-four hours."[6] (*Id.*)

## III. The ALJ's Decision

The ALJ concluded that (1) the plaintiff had not engaged in substantial gainful activity since September 13, 2019, the alleged onset date, (2) the plaintiff's severe impairments included lupus and obesity, and (3) those impairments, whether considered individually or in combination, did not meet or equal any of those listed in Appendix 1. (Tr. 15–17.) The ALJ then determined that the plaintiff had the residual functional capacity "to perform sedentary work as defined in 20 C.F.R. 416.967(a), except that she can occasionally stoop and squat and cannot work outside in

---

[5] Being off-task includes "needing unscheduled breaks[ ] and missing unscheduled work days." *Rugless v. Comm'r of Social Sec.*, 548 F. App'x 698, 700 (2d Cir. 2013); *see Lopez v. Kijakazi*, No. 20-CV-02263, 2021 WL 4463288, at *3 (E.D.N.Y. Sept. 29, 2021).

[6] It is not clear from the administrative record whether the counsel ever provided the ALJ with additional records.

hot weather due to swelling in her legs."[7] (Tr. 18.)  According to the ALJ, the plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but that "the [plaintiff's] statements" about the "intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence;" she also stated that "[the plaintiff's] doctors reported that she is fine," and "there is nothing in the records to confirm frequent flareups."  (Tr. 19.)

In reaching this conclusion, the ALJ relied primarily on consultative examiner Dr. Schwartz's opinion that the plaintiff was "not disabled" and that her symptoms were only "partially consistent" with the medical record, even though Dr. Schwartz did not examine the plaintiff.  The ALJ found that Dr. Schwartz's conclusion was "persuasive" because it was "consistent with the treating records that [he] reviewed," and because Dr. Schwartz was "familiar with the Social Security rules and regulations."  (Tr. 20.)  The ALJ determined that his conclusions about the plaintiff's ability to sit, stand and to do light work was "somewhat persuasive," because the record supported "a sedentary residual functional capacity."  (Tr. 21.)

The ALJ found that treating nurse practitioner Manoj's opinions about the plaintiff's physical limitations were "somewhat persuasive," but that "[her] statement that the [plaintiff] gets frequent flare up [sic] with lupus is not documented in the records and thus, there is no basis to find that the claimant cannot sit for six hours in an eight hour workday on a consistent basis." (*Id.*)

The ALJ rejected Dr. Shadlen's opinion that the plaintiff suffered moderate to marked physical limitations as not persuasive because it was "inconsistent with the treating records showing mostly normal physical examination results."  (Tr. 20.)  Dr. Atoynatan's opinion that

---

[7] The ALJ also found that the plaintiff could "understand, remember, and apply simple and more complex instructions and can occasionally interact with the public and coworkers."  (*Id.*)

8

the plaintiff may be limited because of the "frequency and severity of [her] flareups" was not persuasive because "disability is not determined on a symptom alone." (Tr. 21.) Similarly, the ALJ did not give any weight to Dr. Bellot's records that the plaintiff had significant limitations, because her opinion was "not supported by the treatment notes." (*Id.*)

## LEGAL STANDARD

A district court reviewing the Commissioner's disability decision must determine "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005). "[S]ubstantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).

"Although factual findings by the Commissioner are 'binding' when 'supported by substantial evidence,' '[w]here an error of law has been made that might have affected the disposition of the case,'" the court will not defer to the ALJ's determination. *Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)). Thus, "[e]ven if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

## DISCUSSION

Remand is warranted for two reasons. First, the ALJ's did not fulfill her duty to develop the record. Second, the ALJ's decision was not supported by substantial evidence.

**I.**     **The ALJ Did Not Fully Develop the Record**

"Before reviewing whether the Commissioner's final decision is supported by substantial evidence under 42 U.S.C. § 405(g), the court must first be satisfied that the ALJ provided plaintiff with a full hearing under the Secretary's regulations . . . ." *Craig v. Comm'r of Soc. Sec.*, 218 F. Supp. 3d 249, 261 (S.D.N.Y. 2016); *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004).  Because of the non-adversarial nature of these proceedings, "even when . . . the claimant is represented by counsel," an ALJ has "regulatory obligations to develop a complete medical record before making a disability determination." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996); *see* 20 C.F.R. § 416.912(b)(1); *see also Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) ("Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record."); *Harrison v. Comm'r of Soc. Sec.*, No. 20-CV-04924, 2022 WL 3045186, at *1 (E.D.N.Y. Aug. 2, 2022).

An ALJ does not have to resolve all inconsistencies in the record, but she must develop the record, which includes recontacting a treating physician if necessary to resolve "obvious gaps." *See Beckman v. Comm'r of Soc. Sec.*, No. 21-CV-1492, 2022 WL 4451041 (E.D.N.Y. Sept. 23, 2022) (collecting cases).  Such gaps can be caused by missing medical evidence, but inconsistencies or vagueness in an opinion can also create gaps and trigger a duty to develop the record further.  *See Madera v. Comm'r of Soc. Sec.*, No. 20-CV-1459, 2021 WL 4480656 (E.D.N.Y. Sept. 30, 2021) (remanding because the ALJ determined that a consultative examiner's opinion was "vague"); *Lee v. Saul*, No. 19-CV-9451, 2020 WL 5362619, at *14 (S.D.N.Y. Sept. 8, 2020) (adopting report and recommendation) ("Although [the treating physician's] assessments setting forth [the plaintiff's] functioning levels were brief, and arguably

vague, the appropriate solution was not to reject the opinions contained therein on that basis, but rather to recontact [the treating physician] in an effort to have him clarify any ambiguities.").

As the ALJ recognized at the hearing, she did not have sufficient information about the details of the plaintiff's SLE flareups, including the specific symptoms, severity, and frequency. Nurse Manoj—one of the plaintiff's treating medical providers since at least 2018—said the plaintiff experienced flareups "frequently." (Tr. 605.) The ALJ rejected that opinion, finding that there was "no basis" for Nurse Manoj's observation because the flareups were "not documented in the records." (Tr. 21; *see also* Tr. 19 ("there is nothing in the records to confirm frequent flareups").)[8]

In fact, however, there is support in the record for Nurse Manoj's observations, including in two other doctors' notes. Consultative examiner Dr. Atoynatan wrote that mixed connective tissue disease "is a recurrent problem with joints that come and go and have flare-ups," that the plaintiff has "swelling of the hands, nodules in the skin, and joint pains . . . [which] vary from place to place," "frequently [] the elbows, wrists, fingers, knees, and ankles," and that "between the lupus and the mixed connective tissue disease, [the plaintiff suffers] fatigue and weakness." (Tr. 609.) Dr. Atoynatan also said that the plaintiff "was frequently unable to get out of bed" or "use her fingers." (Tr. 609.) Consultative examiner Dr. Shadlen also described the pain, swelling, fatigue, rash, and dizziness associated with the plaintiff's SLE. (Tr. 600.)

---

[8] The "treating physician rule" does not apply because the plaintiff filed her claims on December 8, 2022. *See* 20 C.F.R. § 404.1520c. The Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." *Id.* §§ 404.1520c(a), 416.920c(a). However, the regulations "still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating source's] opinion.'" *Soto v. Comm'r of Soc. Sec.*, No. 19-CV-4631, 2020 U.S. Dist. LEXIS 181068, at *11 (E.D.N.Y. Sept. 30, 2020) (quoting *Shawn H. v. Comm'r of Soc. Sec.*, No. 19-CV-113, 2020 U.S. Dist. LEXIS 123589, at *19 (D. Vt. July 14, 2020)).

At the January 2022 hearing, the ALJ explained that she "could not identify the locations where she has the flare-ups and where she is not feeling very well." (Tr. 34.)  The ALJ "did not go over every reported symptom[,]," but "promised[d] to do" so before rendering her decision.  (*Id.*)  She opined, based on "[j]ust looking at the record," that "when [the plaintiff is] bad, she's bad, it is brutal." (Tr. 35.)  She conceded that the plaintiff "might have frequent flare-ups," but that she could not determine that based on the existing record.  (Tr. 35.)  It is impossible to square these observations with the ALJ's written opinion that there was "no basis" to conclude that the plaintiff had "frequent" flare-ups, and that her doctors said she was "fine." (Tr. 19.)

Even if there were not support in the record for what Nurse Manoj wrote, the ALJ was obligated to seek additional clarification to resolve this "obvious gap" in the record.  *See Alfonso v. Comm'r of Soc. Sec.*, No. 20-CV-03914, 2022 WL 219575, at *5 (E.D.N.Y. Jan. 20, 2022) ("[W]here the record contains obvious gaps and the ALJ does not have a complete medical history, . . . ALJ's failure to develop the record . . . may warrant remand."). *Calderon v. Comm'r of Soc. Sec.*, No. 16-CV-9002, 2018 U.S. Dist. LEXIS 36735, at *30 (S.D.N.Y. Mar. 5, 2018), *report and recommendation adopted*, 2018 U.S. Dist. LEXIS 48326 (S.D.N.Y. Mar. 23, 2018).

A complete record is especially important when a claimant has lupus, for which "diagnosis can be difficult, and "[s]ymptoms vary greatly," including "joint pain including arthritis, skin rashes, coughing and shortness of breath, fever, fatigue, weight loss, nausea and vomiting, headaches and confused thinking, kidney malfunction, and pericarditis (inflammation of the tissue surrounding the heart). *See Mead*, 2017 WL 1134393, at *1–2.

Accordingly, the case is remanded so that the ALJ can obtain any additional records, review the existing record, and then re-evaluate the various opinions of the medical

12

professionals. *Cf. Sweda v. Berryhill*, No. 16-CV-06236, 2018 WL 259369, at *9 (E.D.N.Y. Jan. 2, 2018) (remanding for not developing the record on the plaintiff's lupus symptoms).

## II. The ALJ's Decision Is Not Supported by Substantial Evidence

The plaintiff argues that the ALJ disregarded "[t]he medical sources best positioned to assess the plaintiff's abilities and limitations"—Dr. Bellot and nurse practitioner Manoj. (ECF No. 9-1 at 14.) According to the plaintiff, the ALJ "simply presented her own estimate of [the] plaintiff's functional capacities—an estimate that amounts to law opinion rather than medically-supported assessment." (*Id.* at 15.)

### a. Evaluation of the Medical Opinion Evidence

An ALJ must consider all medical opinions in the record and "evaluate their persuasiveness" based on the following five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) any "other" factor that "tend[s] to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Thus, the ALJ must "explain" "how [he or she] considered" both the supportability and consistency factors. *Id.* §§ 404.1520c(b)(2), 416.1520c(b)(2); *see Amber H. v. Saul*, No. 20-CV-490, 2021 WL 2076219, at *4 (N.D.N.Y. May 24, 2021) (noting that the two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating physician rule). Supportability is "the strength of the medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase," and consistency "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Vellone v. Saul*, No. 20-CV-261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) (citing 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2)). *See generally*

42 U.S.C. § 423(d)(5)(B) (governing SSA statute that requires an ALJ to base the decision on "all the evidence available in the [record]"). The ALJ need not explicitly discuss the three remaining factors, but if she finds that two or more medical opinions are equally supported and consistent with the record, she must articulate how she considered the three remaining factors. *See id.* §§ 404.1520c(b)(3), 416.920c(b)(3).

"ALJs should not rely heavily on the findings of consultative physicians after a single examination." *See Rucker v. Kijakazi*, 48 F.4th 86, 94 (2d Cir. 2022); *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013); *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir.1990); *Santoro v. Comm'r of Soc. Sec.*, No. 21-CV-2044, 2023 WL 8177365, at *7 (E.D.N.Y. Nov. 27, 2023). The ALJ seems to have based her decision on Dr. Schwartz's opinion that the plaintiff's SLE was not severe enough to be disabling. (Tr. 20.) The ALJ concluded that "[Dr. Schwartz's opinion] is consistent with the treating records [that he] reviewed," and cited his familiarity "with the Social Security rules and regulations." (Tr. 20.)

Dr. Schwartz's familiarity with SSA regulations is not relevant. *See e.g.*, *Heather G. v. Comm'r of Soc. Sec.*, No. 19-CV-6737, 2021 WL 9598218, at *6 (W.D.N.Y. May 3, 2021) ("whether or not Dr. Whelpley was familiar with Social Security [rules and regulations] is irrelevant"). Moreover, the ALJ did not explain how the record supported Dr. Schwartz's opinion. It is also not clear which records Dr. Schwartz reviewed. (Tr. 20 ("[Dr. Schwartz's opinion] is persuasive as the opinion is consistent with the treating records which the doctor reviewed.").) The ALJ has therefore not engaged in an "all-encompassing inquiry focused on how well [Dr. Schwartz's opinion] is supported, or not supported, by the entire record." *Vellone*, 2021 WL 319354, at *6.

14

This is particularly true because Dr. Schwartz did not personally examine the plaintiff. *See Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003) (finding that a "one-shot" examination "is not substantial evidence" and "two SSA consulting physicians" who did not examine the plaintiff "are also not substantial evidence"); *Feliciano v. Comm'r of Soc. Sec.*, No. 22-CV-00789, 2023 WL 2574480, at *9 (E.D.N.Y. Mar. 20, 2023) ("The ALJ's decision to accord Dr. Passo's evidence "significant weight" in denying Plaintiff's claim . . . [when he] did not examine [the plaintiff] . . . was clearly error."); *Keeby o/b/o T.K. v. Comm'r of Soc. Sec.*, No. 21-CV-1202, 2022 WL 4451004, at *5 (E.D.N.Y. Sept. 23, 2022).

The ALJ rejected the opinions of providers who did examine the plaintiff—Drs. Shadlen, Atoynatan, and Bellot, and Nurse Manoj—as "not persuasive" or supported by the treating records. But each medical professional reported that plaintiff had significant physical limitations because of the SLE flareups, including joint pain and stiffness, swelling in her hands and feet, "profound fatigue" and "chronic migraines," all of which are directedly related to the ALJ's disability determination at step three, as well as the residual functional capacity determination at step four. Moreover, Dr. Bellot and Nurse Manoj were the plaintiff's treating care providers and saw the plaintiff more often than anyone else in the record. *See* 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). Even under the "[new] regulations" the ALJ's analysis is "very similar to the analysis under the old [treating physician] rule." *Cuevas*, 2021 WL 363682, at *9. The ALJ did not sufficiently explain why she rejected these opinions.

Finally, the ALJ decision is in obvious tension with the "feeling" expressed at the hearing that "this is an off-task case," and that the plaintiff "goes to the doctor sufficiently [enough] where a report of symptoms, if we have enough of them, we should be able to find her off task." (Tr. 35.) "When the record contains indications that a claimant's residual functional capacity

15

would require being off-task for a substantial part of the workday, the Commissioner's decision should consider whether this would preclude the claimant from performing past relevant work or transitioning to other work." *Richardson v. Saul*, No. 19-CV-3603, 2021 WL 3741505, at *6 (E.D.N.Y. Aug. 24, 2021). The ALJ's residual functional capacity determination was not supported by the record evidence.

An ALJ may not substitute her own judgment of a claimant's condition for that of a medical professional. *See Balsamo v. Chater*, 142 F.3d 75, 91 (2d Cir. 1998) ("[I]t is well-settled that 'the ALJ cannot arbitrarily substitute his own judgment for a competent medical opinion . . . She is not free to set his own expertise against that of a physician . . . ." (citing *McBrayer v. Sec'y of HHS.*, 712 F.2d 795, 799 (2d Cir. 1983))); *Volper v. Commr of Soc. Sec.*, No. 20-CV-06193, 2022 WL 9449666, at *1 (E.D.N.Y. Oct. 14, 2022). Nor is an ALJ permitted to "assess whether objective findings reflect a physician's opinion." *See Cira v. Comm'r of Soc. Sec.*, 15-CV-6704, 2017 WL 4339480, *9 (E.D.N.Y. Sept. 29, 2017) (quoting *Peed v. Sullivan*, 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991) ("An ALJ cannot simply 'secure raw data from the treating physician' to make his or her own disability decision.")). In reaching her conclusion, the ALJ "impermissibly replaced the recommendations of accredited medical physicians with his own layperson's assessment. This is error and requires remand." *Volper*, 2022 WL 9449666, at *2.

## CONCLUSION

For these reasons, the plaintiff's motion for judgment on the pleadings is granted, the Commissioner's motion is denied, and the action is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

                                                                                       s/Ann M. Donnelly

                                                                 ANN M. DONNELLY
                                                                 United States District Judge

Dated: Brooklyn, New York
         March 26, 2024